UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JASON SKAGGS,

       Plaintiff,

v.                             Civil Action No. 2:10-0768

THE KROGER COMPANY/KROGER LIMITED
PARTNERSHIP I, an Ohio Corporation,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

       Pending is defendant's motion for summary judgment, filed March 18, 2011.

### I.  Background

       This is a deliberate intention action in which plaintiff Jason Skaggs seeks to recover damages from defendant the Kroger Company/Kroger Limited Partnership I ("Kroger") for injuries incurred on the job.[1]  The following factual recitation is given in the light most favorable to the plaintiff.

       Skaggs was formerly employed as a "stock person" at a Kroger grocery store in Beckley, West Virginia.  (Pl.'s Resp. 2).

---

[1]    The complaint also alleges a negligence claim that is plainly barred under the Workers' Compensation Act, W. Va. Code § 23-2-6.

When Skaggs was hired in November 2007, his job duties included stocking shelves and running the cash register when needed. (Def.'s Mot. Summ. J., Ex. B, Skaggs Dep. at 43-44).  After a coworker suffered a heart attack in late 2007, Skaggs' duties were expanded to include separating groceries in the store's loading dock area and loading the groceries into carts for later stocking on the store's shelves.  (Id. at 43-45).

Loading the carts required Skaggs to use a motorized "pallet jack."[2]  (Id., Ex. H, Expert Report of George J. Wharton, P.E. ("Wharton Report") at 10 (citing Skaggs Dep. at 46)). Skaggs testified, and Kroger does not dispute, that he never received formal training on how to operate a pallet jack.  (Pl.'s Resp., Ex. 3, Skaggs Dep. at 34).  Although he signed a "Safety Training Verification Form" which indicates that he did receive such training, Skaggs says that he did not read the verification form before signing it.  (Id.).

Skaggs testified that when he started working at the grocery store, Paul Goots, the store manager, asked him if he had ever used a pallet jack, and he told Goots that he had not.  (Id.

---

[2]     The parties and various deponents interchangeably refer to the machine as a pallet jack, pallet truck, pallet lift, and power jack.  The court will refer to the machine as a pallet jack.

at 51).  On the day Skaggs took over the cart-loading duties, Goots again asked him if he had used a pallet jack, and Skaggs again said no.  (Id. at 52).  Skaggs also recalls a phone conversation in which he reminded Goots that he had received no training on operating the pallet jacks.  "I had mentioned that I still hadn't been trained on them; I didn't know exactly how to use them, and [Goots] didn't say anything about it," Skaggs testified.  (Id. at 53).  Eventually, Skaggs figured out how to operate the pallet jacks on his own.  As he stated, "When I was back there getting groceries, I had seen [a coworker] do it enough to kind of get the idea of how to run them."  (Id. at 52).

        Skaggs had been using the store's two pallet jacks for roughly four months prior to incurring the injuries that give rise to this action.  (Def.'s Mot. Summ. J., Ex. B, Skaggs Dep. at 54).  During this 4-month period, Skaggs had problems with one of the jacks and complained to Goots about it.  (Id. at 52).  He told Goots that the machine would sometimes accelerate on its own and would even take off at top speed.  (Id., Ex. H, Wharton Report at 10 (citing Skaggs Dep. at 55)).  The head night supervisor at the store, Reginald Green, noticed that not just one, but both of the store's pallet jacks were malfunctioning. Green, who used the machines every night that he was on duty,

3

testified that "whenever you stop them sometimes, they'll keep on rolling, you know, like the brakes weren't catching, you know. One particular time, I turned around and it was still following me, you know, after I stopped it, you know."  (Pl.'s Resp., Ex. 1, Green Dep. at 9-10).  Green also recounted a previous incident in which a pallet jack at the store pinned an employee "against the wall and hurt her hand."  (Id. at 17).  Unlike Skaggs, however, Green experienced no problems with sudden acceleration, and he never complained about the malfunctioning pallet jacks to his superiors at Kroger.  (Id. at 10-11).

On May 4, 2008, Skaggs was moving and separating grocery shipments in the store's loading dock area.  (Compl. ¶ 9).  One of the pallet jacks -- specifically the one that Skaggs had previously complained to Goots about -- was blocking access to a bay door, so Skaggs tried operating the machine to move it out of the way.  (Id. ¶¶ 8-9).  He grasped the handle of the jack's tiller arm, which is used to maneuver the machine, and began engaging its motor.  (Id. ¶ 9; Pl.'s Resp., Ex. 3, Skaggs Dep. 61-64).  Suddenly, the pallet jack began accelerating toward Skaggs.  (Id.).  He pushed the tiller arm into the braking position so as to stop the machine, but the braking mechanism malfunctioned and the jack, which weighed over 2,000 pounds,

**4**

continued moving toward him.  (Id.; id., Ex. 2, Wharton Dep. at 17).  It then rolled over Skaggs' right foot, causing fractures to his second, third, and fourth metatarsals.  (Def.'s Mot. Summ. J, Ex. B, Skaggs Dep. at 89).  Skaggs was not wearing steel toe boots or any other type of protective footgear at the time of the incident.  (Pl.'s Resp. 5-6).

Skaggs instituted this action in the Circuit Court of Kanawha County on May 3, 2010.  Kroger removed on May 26, 2010, invoking the court's diversity jurisdiction.  The complaint sets forth two counts against Kroger.  Count one asserts a deliberate intention claim pursuant to West Virginia Code § 23-4-2(d)(2)(ii).  (Compl. ¶¶ 13-15).  Count two asserts a claim for negligence.  (Id. ¶¶ 16-18).

On March 18, 2011, Kroger moved for summary judgment based upon the following grounds: (1) plaintiff has failed to satisfy the elements of his deliberate intention claim; and (2) Kroger is immune from plaintiff's negligence claim under West Virginia Code § 23-2-6.  (Def.'s Mot. Summ. J. at 1).

## II.   Motion for Summary Judgment

**A.   Governing Standard**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not

6

lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   Deliberate Intention Claim

The West Virginia Workers' Compensation Act generally immunizes covered employers from employee suits for "damages at common law or by statute" resulting from work-related injuries. W. Va. Code § 23-2-6.  This immunity is lost, however, if an employer acts with "deliberate intention."  Id. § 23-4-2(d)(2). If the deliberate intent exception applies, the employee may file an action for damages in excess of workers' compensation

benefits.  Id. § 23-4-2(c).

Subsections (d)(2)(i) and (d)(2)(ii) of § 23-4-2 provide two distinct methods of proving that an employer acted with "deliberate intention."  Skaggs' claim is asserted pursuant to § 23-4-2(d)(2)(ii).  Under that provision, employer immunity is lost if the employee proves each of the following five elements:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious

8

compensable injury or compensable death as defined in
section one, article four, chapter twenty-three whether
a claim for benefits under this chapter is filed or not
as a direct and proximate result of the specific unsafe
working condition.

W. Va. Code §§ 23-4-2(d)(2)(ii)(A)-(E).


The deliberate intention statute directs that "the court shall dismiss the action upon motion for summary judgment if it finds . . . that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E), inclusive, paragraph (ii) of this subdivision do not exist."  Id. § 23-4-2(d)(2)(iii)(B).  "'Thus, in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors.'"  Marcus v. Holley, 618 S.E.2d 517, 529 (W. Va. 2005) (quoting Mumaw v. U.S. Silica Co., 511 S.E.2d 117, 120 (W. Va. 1998)).  The court considers each statutory requirement in turn.


1.   Specific Unsafe Working Condition


Kroger first contends that Skaggs has offered no evidence identifying "a specific unsafe working condition" that presented "a high degree of risk and a strong probability of serious injury or death," as required by W. Va. Code § 23-4-2(d)(2)(ii)(A).  Skaggs responds that the record reveals several

unsafe working conditions, including the malfunctioning pallet jack about which he had complained and by which he was injured, as well as Kroger's failure to train Skaggs on the operation of the pallet jack and Kroger's failure to provide Skaggs with protective footwear.[3]

It appears that Skaggs has offered sufficient evidence to show that the malfunctioning pallet jack created a specific unsafe working condition. Skaggs' testified in his deposition that the pallet jack had recurring acceleration and braking problems. (Skaggs Dep. at 48, 52-54). As earlier noted, the testimony of Reginald Green, the store's night supervisor, similarly shows that both of the store's pallet jacks had been malfunctioning in a dangerous manner. (Green Dep. at 9-10 ("whenever you stop them sometimes, they'll keep on rolling . . .like the brakes weren't catching . . . One particular time, I turned around and it was still following me . . . after I stopped it")). And considering that the machine weighed over 2,000 pounds, (Wharton Dep. at 17), the foregoing testimony indicates

---

[3] Although Skaggs initially identifies the failure to provide him with proper footwear as a specific unsafe working condition, he provides little to no analysis of this unsafe condition under the remaining four elements of his deliberate intention claim. The court thus does not discuss the matter further.

that the malfunctioning pallet jack created a "strong probability of serious injury," see W. Va. Code § 23-4-2(d)(2)(ii)(A).

Furthermore, Skaggs' testimony concerning Kroger's failure to train him on the operation of the pallet jack constitutes evidence of yet another specific unsafe working condition.  In Arnazzi v. Quad/Graphics, Inc., 621 S.E.2d 705 (W. Va. 2005), the trial court found that "the lack of legally-required training of the [plaintiff-employee] on the safe use of a forklift . . . qualified as a specific unsafe working condition" within the meaning of the deliberate intention statute.  Id. at 707.  Although the defendant-employer conceded this issue on appeal, the West Virginia Supreme Court nonetheless observed that substantial evidence supported the trial court's conclusion that the employer's failure to provide legally-mandated training amounted to "a specific unsafe working condition."  Id.

As Skaggs points out, regulations promulgated by the Occupational Safety and Health Administration ("OSHA") direct that "[t]he employer shall ensure that each powered industrial

truck[4] operator is competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph (l)."  29 C.F.R. § 1910.178(l)(1)(i).  The OSHA regulations further provide that "[p]rior to permitting an employee to operate a powered industrial truck (except for training purposes), the employer shall ensure that each operator has successfully completed the training required by this [section]."  Id. § 1910.178(l)(1)(ii).

It seems, then, that the OSHA regulations required Kroger to provide Skaggs with formal training on the operation of the pallet jack.  Yet Skaggs testified, and Kroger does not

_____

[4]     Regarding the scope of the term "powered industrial trucks," the OSHA regulation provides as follows:

(1) This section contains safety requirements relating to fire protection, design, maintenance, and use of fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines.  This section does not apply to compressed air or nonflammable compressed gas-operated industrial trucks, nor to farm vehicles, nor to vehicles intended primarily for earth moving or over-the-road hauling.

29 C.F.R. § 1910.178(a)(1).  The pallet jack appears to fall within the class of "specialized industrial trucks powered by electric motors."  Id.  Kroger does not dispute this point, and it acknowledges in its own rules and regulations that employees must obtain formal training and OSHA certification before operating powered equipment.  (Def.'s Mot. Summ. J., Ex. F, Kroger Rules and Regulations, Rule 7).

12

dispute, that he never received such training.  (Skaggs Dep. 34).[5]  Accordingly, just as the employer's failure to provide legally-required forklift training constituted a specific unsafe working condition in <u>Arnazzi</u>, Kroger's failure to provide Skaggs with training on the pallet jack as mandated by OSHA regulations qualifies as a specific unsafe working condition in this case.

In sum, viewing the record in the light most favorable to the plaintiff, genuine issues of fact arise as to the existence of at least two specific unsafe working conditions at the Kroger store: the malfunctioning pallet jack and Skaggs' lack of training on the pallet jack.

2.  Actual Knowledge

Kroger next maintains that it had no "actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious

---

[5]  While Kroger emphasizes that Skaggs signed verification forms indicating that he had been trained in the use of the pallet jack, it does not contend that he actually received such training and in fact concedes that he did not.  (<u>See</u> Def.'s Reply at 4 (noting that the Kroger managers "believed incorrectly" that Skaggs had received proper training).  Moreover, the fact that Skaggs signed the verification forms is relevant only to Kroger's <u>knowledge</u> of his lack of training.  The court therefore discusses this fact under the "actual knowledge" element of Skaggs' deliberate intention claim.

injury or death presented by the specific unsafe working condition" within the meaning of § 23-4-2(d)(2)(ii)(B).  It relies on the testimony of several Kroger managers -- including Paul Goots, Reginald Green, and Jason Lambert -- who all testified that they did not know that Skaggs lacked training in use of the pallet jacks.  Skaggs, on the other hand, asserts that the record reveals questions of fact regarding Kroger's knowledge.

The actual knowledge requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition.  Instead, it must be shown that the employer actually possessed such knowledge."  Syl. Pt. 3, <u>Blevins v. Beckley Magnetite, Inc.</u>, 408 S.E.2d 385 (W. Va. 1991).[6]  "This is a high

_____

[6]    The legislature amended § 23-4-2(d)(2)(ii)(B) in 2005, substituting the language "[t]hat the employer, prior to the injury, had <u>actual knowledge</u> of the existence of the specific unsafe working condition," in the place of "[t]hat the employer had a <u>subjective realization and appreciation</u> of the existence of the specific unsafe working condition."  <u>Coleman Estate ex rel. v. R.M. Logging, Inc.</u>, 664 S.E.2d 698, 702 n.7 (W. Va. 2008) (emphasis added).  This change made no practical difference in interpreting the statute, however, because in <u>Blevins</u> the West Virginia Supreme Court of Appeals read the terms "subjective realization" and "appreciation" to require a showing of "actual knowledge."  Syl. Pt. 3, <u>Blevins</u>, 408 S.E.2d at 385.

14

threshold that cannot be successfully met by speculation or conjecture." Mumaw v. U.S. Silica Co., 511 S.E.2d 117, 123 (W. Va. 1998) (per curiam). Making the "actual knowledge" determination "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn. Accordingly, while a plaintiff may choose to introduce evidence of prior similar incidents or complaints to circumstantially establish that an employer has acted with deliberate intention, evidence of prior similar incidents or complaints is not mandated by W. Va. Code, 23-4-2([d])(2)(ii)." Syl. Pt. 2, Nutter v. Owens-Illinois, Inc., 550 S.E.2d 398 (W. Va. 2001).

Regarding the first unsafe working condition, the malfunctioning pallet jack, it appears that Skaggs has offered sufficient evidence to show actual knowledge on the part of Kroger, by and through its supervisors. In his deposition, Skaggs testified that he complained to Paul Goots, the store manager, about how the pallet jack that later injured him would sometimes accelerate on its own and take off at top speed. (Skaggs Dep. at 55). And Reginald Green, the Kroger night supervisor, testified that the store's pallet jacks had braking problems and that a prior employee had been injured by one when

15

it pinned her against a wall, (Green Dep. at 9-10), further
indicating that supervisory-level employees knew that the
machines were both malfunctioning and potentially dangerous.
Viewed in the light most favorable to the plaintiff, Skaggs' and
Green's testimony create factual issues as to Kroger's actual
knowledge of both (1) a specific unsafe working condition (i.e.,
the malfunctioning pallet jack) and (2) the strong probability of
serious injury presented by that condition.

Skaggs has also offered sufficient evidence regarding
Kroger's actual knowledge of his lack of training on the pallet
jack, the second unsafe working condition.  Skaggs testified that
Goots twice asked him if he had ever used a pallet jack, and that
both times he told Goots he had not.  (Skaggs Dep. at 51-52).
Skaggs also said that he reminded Goots of his lack of training
in a phone conversation.  (Id. at 53 ("I had mentioned that I
still hadn't been trained on them; I didn't know exactly how to
use them, and [Goots] didn't say anything about it.")).  Kroger
points out that, contrary to Skaggs' testimony, Goots testified
that he did not know of Skaggs' lack of training.  Kroger further
notes that Skaggs signed forms stating that he had received
training on heavy machinery.  But this conflicting evidence only
confirms that there are genuine issues of fact as to Kroger's

16

knowledge of the unsafe working condition.

In addition, Kroger does not dispute that it had actual knowledge of the "strong probability of serious injury" presented by a failure to train employees in operating the pallet jacks. Indeed, considering that Kroger's own rules and regulations require employees to obtain training and OSHA certification before they can operate powered equipment such as the pallet jack, (see Def.'s Mot. Summ. J., Ex. F, Kroger Rules and Regulations, Rule 7), one could fairly conclude that Kroger appreciated the probability of injury that could result from a lack of such training. This conclusion is also supported by the following exchange from Goots' deposition:

> Q    . . . I'm just wondering if you as a representative of Kroger take any responsibility for ensuring that these employees are trained before operating dangerous equipment?

> A    Yes.  I mean, I want everyone to be trained.  I want everybody to be safe as much as possible, absolutely.  If I had known [Skaggs] was not trained, he'd never been put in the position.

(Goots Dep. at 25).  This testimony shows that Goots, a Kroger manager, was aware of the safety risks created by allowing untrained employees to operate pallet jacks.

Thus, genuine issues of fact remain as to Kroger's actual knowledge of the specific unsafe working conditions at the

Kroger store and the probability that these conditions could create serious injuries.

### 3.    Violation of State or Federal Safety Law

To establish the third element of his deliberate intention claim, Skaggs must offer evidence showing that the specific unsafe working condition violated a "state or federal safety statute, rule or regulation . . . which . . . was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions."  W. Va. Code §§ 23-4-2(d)(2)(ii)(C).  Kroger does not directly challenge Skaggs' ability to satisfy this element.

Regarding the malfunctioning pallet jack, this specific unsafe working condition appears to have violated the OSHA regulations governing "powered industrial trucks."  <u>See</u> 29 C.F.R. § 1910.178(p)(1) ("If at any time a powered industrial truck is found to be in need of repair, defective, or in any way unsafe, the truck shall be taken out of service until it has been restored to safe operating condition."); <u>id.</u> § 1910.178(q)(1) ("Any power-operated industrial truck not in safe operating

18

condition shall be removed from service."). And as discussed supra Part II.B.1, Kroger's failure to train Skaggs on using the pallet jacks violated the OSHA regulations as well. See id. § 1910.178(l)(1)(i)-(ii). The foregoing regulations were, moreover, "specifically applicable" to the particular working condition at issue here (i.e., the operation of "powered industrial trucks") rather than being general safety regulations. Skaggs has therefore satisfied the third element of his deliberate intention claim by showing that the unsafe working conditions at Kroger's store violated specifically applicable safety regulations.

> 4.   Intentional Exposure

Kroger next contends that there is no evidence that it "intentionally exposed" Skaggs to a specific unsafe working condition as required by W. Va. Code § 23-4-2(d)(2)(ii)(D). It relies on Goots' deposition testimony, wherein he stated that no one forced Skaggs to use the pallet jack and that he chose to do so on his own accord. In response, Skaggs asserts that the intentional exposure requirement is satisfied because Kroger management knew that he was untrained and that the machines malfunctioned, and because they directed Skaggs to do his job that evening, which necessarily entailed use of the pallet jack.

To satisfy the "intentional exposure" requirement, there "must be some evidence that, with conscious awareness of the unsafe working condition . . . , an employee was directed to continue working in that same harmful environment." Tolley v. ACF Indus., Inc., 575 S.E.2d 158, 168 (W. Va. 2002).  As explained in Tolley:

> This Court has previously discussed what type of evidence is necessary to meet the fourth prong of the "deliberate intention" standard.  In Mayles [ v. Shoney's Inc., 405 S.E.2d 15, 23 (W. Va. 1990)], we found sufficient evidence was introduced where "management at the restaurant knew how the employees were disposing of the grease, knew that a previous employee had been injured by such practice, had received employee complaints about the practice, and still took no action to remedy the situation." . . . Similarly, in Sias [ v. W-P Coal Co., 408 S.E.2d 321, 327-28 (W. Va. 1991)], we held that the requisite intentional exposure prong had been met where the plaintiff produced evidence that his coal employer directed him to work in an unsafe mining area despite having actual knowledge of the probability and risk of a coal outburst in that particular section of the mine.

Tolley, 575 S.E.2d at 167-68.

Skaggs has offered evidence showing that, like the employer in Mayles, Kroger management (1) knew of the malfunctioning pallet jack and Skaggs' lack of training (i.e., both of the specific unsafe working conditions), (2) knew that a previous employee had been injured by one of the store's malfunctioning pallet jacks, and (3) had received employee

20

complaints (specifically from Skaggs to Goots) about the particular malfunctioning pallet jack that injured Skaggs and Skaggs' lack of training.  Furthermore, Skaggs testified that Goots directed him to take over cart-loading duties, (Skaggs Dep. at 48), a job which required use of the store's pallet jacks, despite management's knowledge of the unsafe working conditions. Having found "some evidence that, with conscious awareness of the unsafe working condition . . . , an employee was directed to continue working" in a harmful environment, <u>Tolley</u>, 575 S.E.2d at 168, the court concludes that Skaggs has provided sufficient evidence to make a prima facie showing of intentional exposure under W. Va. Code § 23-4-2(d)(2)(ii)(D).

5.    Proximate Cause

Kroger argues that there is no evidence satisfying the fifth and final element of Skaggs' deliberate intention claim, which requires Skaggs to show that he "suffered serious compensable injury . . . as a direct and proximate result of the specific unsafe working condition," W. Va. Code §§ 23-4-2(d)(2)(ii)(E).  Quoting a passage from <u>Mumaw v. U.S. Silica Co.</u>, 511 S.E.2d 117, 123 (W. Va. 1998), Kroger further asserts that "where an employee creates a specific unsafe working condition by not following expected procedures, a deliberate intention action

21

cannot be maintained."  (Def.'s Mem. in Supp. Mot. Summ. J. at

18).  Skaggs contends, in response, that he has offered

sufficient evidence of proximate cause, and that Kroger is

improperly attempting to raise the defense of contributory

negligence in a deliberate intention case.

While the requirement of "proximate cause in a

deliberate intent cause of action is statutory, the definition of

proximate cause set out in the statute is the common law

definition" adopted by the West Virginia Supreme Court.  <u>Tolley</u>

<u>v. Carboline Co.</u>, 617 S.E.2d 508, 512 (W. Va. 2005).  That court

has held that "'the proximate cause of an event is that cause

which in actual sequence, unbroken by any independent cause,

produces the event and without which the event would not have

occurred.'"  <u>Id.</u> (quoting <u>Johnson v. Mays</u>, 447 S.E.2d 563, 568

(W. Va. 1994)).  "It is well established in West Virginia that

ordinarily the issue of proximate cause is a jury question to be

decided based upon the totality of the evidence."  <u>Arnazzi v.</u>

<u>Quad/Graphics, Inc.</u>, 621 S.E.2d 705, 708 (W. Va. 2005).  More

specifically, proximate cause presents "'issues of fact for jury

determination when the evidence pertaining to [proximate cause]

is conflicting or where the facts, even though undisputed, are

such that reasonable men may draw different conclusions from

22

them.'" Id. (quoting Syl. Pt. 7, Stewart v. George, 607 S.E.2d 394 (2004)).

Viewing the evidence in the proper light, there appear to be issues of material fact as to whether the specific unsafe working conditions proximately caused Skaggs' foot injuries. With respect to the malfunctioning pallet jack, Skaggs has presented evidence -- in the form of his and Green's deposition testimony -- showing that the machine had recurring braking and acceleration problems which could have foreseeably resulted in the machine unexpectedly rolling over an employee's foot.  And Kroger does not dispute that the pallet jack did actually roll over Skaggs' foot, and that it did in fact cause Skaggs' injuries.  Although Kroger does dispute Skaggs' assertion that the machine was defective, this only shows that there is conflicting evidence regarding proximate cause, thus revealing a factual issue for jury determination.  See Arnazzi, 621 S.E.2d at 708.

As to whether Skaggs has offered sufficient evidence showing that his lack of training on the pallet jack proximately caused his injuries, the West Virginia Supreme Court's decision in Arnazzi is relevant to this issue.  There the plaintiff claimed that his employer's failure to provide him with forklift

safety training was the proximate cause of injuries he incurred
while operating the forklift.  Speaking generally on the issue of
proximate cause in cases involving an employer's failure to
provide safety training, the court explained that "the finder of
fact must look at the nature of the training and the accident or
injury and determine if there is a proximately causal
connection."  Id. at 709 n.5.  The relevant evidence in Arnazzi
included (1) an accident report prepared by the defendant's
employee identifying the cause of the accident as being
plaintiff's violation of a safety rule while driving the
forklift, and (2) testimony of the plaintiff's coworkers
suggesting that the plaintiff had not always operated the
forklift with proper caution, care, and attention.  Id. at 708-
09.  After finding that this evidence "permits the conclusion
that the accident arose as a result of risks and conduct that the
omitted training specifically sought to reduce and avert," the
court concluded that "[t]he issue of proximate cause was one to
be decided by the trier of fact."  Id. at 709.

     The court finds that Skaggs has offered sufficient
evidence for a jury to find a "proximately causal connection"
upon examining both the "nature of the training and the accident
or injury."  See id.  The OSHA regulations set forth the content

of the required training program that Kroger failed to provide to Skaggs.  Those regulations provide that "[p]owered industrial truck operators shall receive initial training in," among other things, "[t]ruck controls and instrumentation: where they are located, what they do, and how they work" and "[s]teering and maneuvering."  29 C.F.R. § 1910.178(l)(3).  Since the nature of this training concerned truck controls and maneuvering, and inasmuch as the evidence shows that Skaggs incurred his injuries while attempting to maneuver the pallet jack using the machine's controls, a reasonable jury could find that Skaggs' accident arose as a result of "risks and conduct that the omitted training specifically sought to reduce and avert."  Arnazzi, 621 S.E.2d at 708.  And so, the question of whether Kroger's failure to train Skaggs proximately caused his injuries raises disputed issues of fact to be resolved by the jury.

        Lastly, the court rejects Kroger's assertion that Skaggs' deliberate intention claim fails on the grounds that he created the specific unsafe working conditions.  Although it does not expand upon this argument, Kroger appears to be contending that Skaggs was the proximate cause of his injuries because he mishandled the pallet jack.  Regarding Skaggs' improper usage of the machine, Kroger's mechanical engineering expert, George

Wharton, concluded that "Skaggs created a hazardous condition by parking the lift in a careless manner with the control handle up against the loading dock door," and that "Skaggs caused his own injury by working in a confined space and then backing the lift up onto his foot instead of driving the lift forward." (Def.'s Mot. Summ. J., Ex. H, Wharton Report at 18). Additionally, photographs of the incident indicate that Skaggs was improperly attempting to maneuver the pallet jack from the front of the machine rather than from the rear. (See id., Ex. J). As Skaggs correctly notes, however, the West Virginia Supreme Court has held that "[w]hen an employee asserts a deliberate intention cause of action against his/her employer . . . the employer may not assert the employee's contributory negligence as a defense to such action." Syl. Pt. 8, Roberts v. Consolidation Coal Co., 539 S.E.2d 478 (W. Va. 2000).

Kroger's reliance on Mumaw v. U.S. Silica Co., 511 S.E.2d at 123, is unavailing. The court in Mumaw referenced its prior ruling in Blevins v. Beckley Magnetite, Inc., 408 S.E.2d 385 (W. Va. 1991), where an employee who was injured while cleaning out a conveyor tail pulley claimed that the employer's method of cleaning out the pulley presented a specific unsafe working condition. The court rejected this argument after

26

finding that "[a] specific unsafe working condition . . . only existed when the [employee] went into the guarded area, without first turning off the equipment, to clean up the ore spillage, failing to comply with safety procedures."  Blevins, 408 S.E.2d at 391.  Applying the principle adopted in Blevins, the court in Mumaw, in a case where an employee was injured by falling through an opening when he failed to close the trap door designed to cover the opening despite both his training and his duty to do so, concluded that "where an employee creates a specific unsafe working condition by not following expected procedures, a deliberate intention action cannot be maintained against the employer."  511 S.E.2d at 123 (emphasis added).  Here, Kroger is hard put to argue that Skaggs failed to follow "expected" procedures regarding the operation of the pallet jack in light of its concession that it failed to provide him with proper training on such procedures.  Nor can it be said that Skaggs "created" the specific unsafe working conditions of either the malfunctioning pallet jack or his lack of pallet jack training.

        In sum, Skaggs has shown genuine issues of material fact as to each element of his deliberate intention claim.  Summary judgment as to count one of Skaggs' complaint is accordingly denied.

C.   Negligence Claim

Count two of Skaggs' complaint asserts a negligence claim against Kroger.  As the parties acknowledge, Kroger is immune from this simple negligence claim inasmuch as (1) it paid into the state's workers' compensation fund, and (2) it was Skaggs' employer on the date of the incident in question.  See W. Va. Code § 23-2-6.  Thus, Kroger is entitled to summary judgment as to count two.

### III.   Conclusion

For the foregoing reasons, the court ORDERS as follows:

1.   That Kroger's motion for summary judgment as to
     Skaggs' deliberate intention claim (count one)
     be, and it hereby is, denied.

2.   That Kroger's motion for summary judgment as to Skaggs'
     negligence claim (count two) be, and it hereby is,
     granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: April 21, 2011

John T. Copenhaver, Jr.
United States District Judge

28